**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| SONJIA GUYTON,<br><br>   Plaintiff,<br><br> v.<br><br>LINXUP, LLC, f/k/a AGILIS SYSTEMS, LLC<br> Serve: Cogency Global Inc.<br>   9666 Olive Blvd., Suite 690<br>   St. Louis, MO  63132<br><br>   Defendant. | Case No.<br><br><br>**JURY TRIAL DEMAND** |

## COMPLAINT

COMES NOW, Plaintiff Sonjia Guyton, by and through her attorneys, Stowell & Friedman, Ltd. and Niemeyer Grebel Kruse, files this Complaint of race discrimination and retaliation against Defendant Linxup, LLC, and in support states as follows:

### JURISDICTION AND VENUE

1. Plaintiff's claims arise under 42 U.S.C. § 1981 and 42 U.S.C. § 2000e *et seq.*, and this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343.

2. Venue is proper in the Eastern District of Missouri pursuant to 28 U.S.C. § 1391(b). Defendant is licensed to do business, maintains its principal place of business, and services clients who are residents of this District. Throughout Plaintiff Sonjia Guyton's tenure at Defendant Linxup, LLC, Plaintiff worked for and was harmed by Defendant in this District.

### PARTIES

3. Defendant Linxup, LLC, formerly known as Agilis Systems, LLC, is a Missouri corporation headquartered in Chesterfield, Missouri. In approximately January 2021, Agilis Systems, LLC, changed its name to Linxup, LLC ("Defendant," "Linxup," or "the Company").

Defendant is a leading provider of GPS tracking for vehicles and other assets for both large businesses and individuals. As of May 2021, Defendant employed approximately 160 employees.

4. Plaintiff Sonjia Guyton, a resident of Missouri, is African American and was employed by Defendant from May 2015 until she was unlawfully terminated in June 2020.

## FACTUAL ALLEGATIONS

5. Plaintiff Guyton began her employment with Linxup as a Sales Representative in approximately May 2015 and remained a devoted and successful employee until Linxup unlawfully terminated her in 2020. Plaintiff earned several promotions during her tenure, including to Customer Success Representative in approximately January 2016, and to Strategic Account Manager ("SAM") in approximately June 2018. Plaintiff maintained her exceptional performance following her promotions and continued to excel at her job.

6. In spite of Plaintiff's proven success in account management, Linxup subjected Plaintiff to racial discrimination, a hostile work environment, and retaliation for making protected complaints about Linxup's disparate treatment of her. Rather than using Plaintiff's complaints of racial discrimination as an opportunity to create equal opportunity employment, Linxup defended and supported the discriminators, including Plaintiff's supervisor. Furthermore, Linxup retaliated against Plaintiff by subjecting her to an escalating campaign of harassment and discrimination and ultimately terminated her.

7. In approximately June 2018, Customer Success Manager, Rosalind Freeman ("Freeman"), an African American woman, and one of the only African Americans in management at Linxup, developed the SAM position to service and grow Linxup's largest and most profitable accounts. However, rather than promote Rosalind Freeman to lead the new SAM team, Linxup promoted two less qualified white men: Matt Biegacki and Steve LaGrange.

8. Plaintiff applied for and was hired into the new SAM position in approximately June 2018. Of the four SAMs hired, Plaintiff was the only African American. Plaintiff excelled in the new SAM position and received positive performance reviews. Indeed, Plaintiff was one of the longest tenured employees at Linxup, and as the company continued to grow and hire additional employees, Plaintiff served as a mentor and resource to newly hired employees, including her managers. Plaintiff's peers often reached out to her for guidance and support.

9. In approximately December 2019, Linxup conducted a reorganization, and as a result, Plaintiff's team reported to Vice President of Sales, Brett Honerkamp ("Honerkamp"), a white man, and Director of Strategic Account Management, Nicole Meyer ("Meyer"), a white woman. Upon information and belief, Rosalind Freeman, the African American woman who created the SAM position, applied for the Director position, but Honerkamp refused to hire Freeman because the overwhelmingly white men did not like Freeman, a black woman, and Freeman was viewed through the stereotypical lens as an angry black woman.

10. Also, as part of the reorganization, the SAM team grew from four to seven SAMs. However, Plaintiff remained the only African American SAM, which remained the case through her termination.

11. In spite of Plaintiff's demonstrated success at Linxup and in the SAM position, Linxup treated Plaintiff less favorably than her non-African American counterparts. Honerkamp failed to recognize Plaintiff's objective accomplishments and refused to give her the positive review warranted by her work. Further, Honerkamp denied Plaintiff the assistance and support that he provided to Plaintiff's all-white counterparts and targeting Plaintiff for increased scrutiny. This hostile work environment continued throughout Plaintiff's employment.

12. Defendant Linxup, and Honerkamp in particular, also consistently denied Plaintiff

new account assignments, which were steered toward Plaintiff's all-white peers. When a new client is obtained, or a SAM departs the company, Linxup assigns the client account, as well as the corresponding commission compensation, to a different SAM. Indeed, when Plaintiff's white SAMs lost accounts due to poor performance, rather than discipline the poor-performing white SAM, Linxup routinely assigned them new accounts to make up for the loss of commissions. However, Linxup consistently denied Plaintiff any new accounts despite her strong performance.

13. Plaintiff complained to Linxup's Human Resources ("HR") department regarding Honerkamp's hostile and disparate treatment of her. Plaintiff feared that Honerkamp would retaliate against her for complaining to HR, so she requested that her complaint be kept anonymous or confidential. However, HR told Plaintiff that it had to inform Honerkamp of her complaint. Plaintiff also complained to a senior manager outside of her division regarding Honerkamp's discrimination and harassment. To Plaintiff's knowledge, Linxup did not conduct an investigation into her serious complaints of discrimination and Linxup took no disciplinary action against Honerkamp.

14. Rather than address Plaintiff's concerns, Honerkamp retaliated against Plaintiff by escalating the hostile work environment and fabricating a performance action against Plaintiff, suspending her, and ultimately terminating her. Honerkamp falsely accused Plaintiff of deficiencies in handling a customer request; however, Plaintiff diligently addressed and resolved the client's concerns prior to her termination. The client is still a customer of Linxup today.

15. Linxup's handling of Plaintiff's purported client complaint is in stark contrast to how Linxup and Honerkamp treated Plaintiff's white colleagues. Several clients complained about white SAMs, going so far as to demand Linxup remove the white SAM from their account due to poor performance. On at least one occasion, Honerkamp traveled to meet with a client that was

unhappy with a white SAM's performance, in order to placate the customer and keep them as a client.  However, Honerkamp did not discipline those white SAMs, let alone suspend or terminate them.  Indeed, when a white SAM lost an account due to poor performance or a customer demand, Honerkamp routinely assigned the SAM a new account to make up for the lost commissions and ensure the white SAM did not lose any compensation.

16. Given Plaintiff's consistently outstanding performance, Linxup's hostile work environment and treatment of Plaintiff are inexplicable in terms other than race, discrimination, and retaliation.

17. Linxup's unlawful discrimination and retaliation caused Plaintiff to suffer significant financial losses and irreparably damaged Plaintiff's career.  Linxup's unlawful discrimination and retaliation further caused Plaintiff emotional distress and other non-pecuniary losses.

18. Punitive damages are appropriate because Linxup's conduct was malicious and/or Linxup was recklessly or callously indifferent to Plaintiff's statutorily protected rights.

<u>**COUNT I**</u>

<u>**RACE DISCRIMINATION
IN VIOLATION OF 42 U.S.C. § 1981**</u>

19. Plaintiff realleges the above paragraphs and incorporates them by reference as though fully stated herein as part of Count I of this Complaint.

20. Section 1977 of the Revised Statutes, 42 U.S.C. § 1981, as amended, guarantees persons of all races the same right to make and enforce contracts, regardless of race.  The term "make and enforce" contracts includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship, including employment relationships.

21. By the acts and conduct described above, Linxup engaged in illegal intentional racial discrimination against Plaintiff in violation of 42 U.S.C. § 1981.

22. Plaintiff has been harmed as a direct and proximate result of Linxup's unlawful conduct.

## COUNT II

### RETALIATION
### IN VIOLATION OF 42 U.S.C. § 1981

23. Plaintiff realleges the above paragraphs and incorporates them by reference as though fully stated herein as part of Count II of this Complaint.

24. Under Section 1977 of the Revised Statutes, 42 U.S.C. § 1981, as amended, it is unlawful to retaliate against any individual for engaging in protected activity, such as reporting employment discrimination.

25. Plaintiff engaged in protected activity by opposing and reporting Linxup's unlawful discriminatory conduct to Linxup's Human Resources.

26. Linxup subjected Plaintiff to additional discrimination and retaliation because she engaged in protected activity.

27. Plaintiff has been harmed as a direct and proximate result of Linxup's unlawful conduct.

## COUNT III

### RACE DISCRIMINATION
### IN VIOLATION OF TITLE VII, 42 U.S.C. § 2000e *et seq.*

28. Plaintiff realleges the above paragraphs and incorporates them by reference as though fully stated herein as part of Count III of this Complaint.

29. Title VII makes it unlawful for an employer to discriminate against any individual

in the terms, conditions, or privileges of employment on the basis of race.

30.     By the acts and conduct alleged above, Linxup engaged in illegal racial discrimination against Plaintiff in violation of Title VII.

31.     Plaintiff has been harmed as a direct and proximate result of Linxup's unlawful conduct.

### COUNT IV

### RETALIATION
### IN VIOLATION OF TITLE VII, 42 U.S.C. § 2000e *et seq.*

32.     Plaintiff realleges the above paragraphs and incorporates them by reference as though fully stated herein as part of Count IV of this Complaint.

33.     Title VII makes it unlawful for an employer to retaliate against an employee because that employee engaged in protected activity, such as filing a charge of discrimination against her employer or complaining to her employer about discrimination on the job.

34.     Plaintiff engaged in protected activity by opposing and reporting Linxup's unlawful discriminatory conduct to Linxup's Human Resources.

35.     Linxup subjected Plaintiff to additional discrimination and retaliation because she engaged in protected activity.

36.     Plaintiff has been harmed as a direct and proximate result of Linxup's unlawful conduct.

WHEREFORE, Plaintiff requests the entry of judgment in her favor and against Linxup as follows:

    a.  Declare that the acts and conduct of Linxup are unlawful and violate 42 U.S.C. § 1981 and Title VII;

    b.  Award Plaintiff the value of all compensation and benefits lost as a result of Linxup's unlawful conduct;

   c.     Award Plaintiff the value of all compensation and benefits she will lose in the future as a result of Linxup's unlawful conduct;

   d.     Award Plaintiff compensatory damages, including but not limited to damages for emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses;

   e.     Award Plaintiff punitive damages due to Linxup's malicious conduct and/or Linxup's reckless or callous indifference to Plaintiff's statutorily protected rights;

   f.     Award Plaintiff prejudgment interest;

   g.     Award Plaintiff attorneys' fees, costs, and disbursements; and

   h.     Award Plaintiff such other make whole equitable, injunctive, and legal relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands trial by jury on all issues so triable.

Respectfully submitted,

**NIEMEYER, GREBEL & KRUSE, LLC**

By: */s/ Patrick A. Hamacher*
Patrick A. Hamacher   #63855MO
David L. Grebel         #52683MO
211 N. Broadway, Suite 2950
St. Louis, MO  63102
314-241-1919 phone
314-665-3017 fax
hamacher@ngklawfirm.com
grebel@ngklawfirm.com

**STOWELL & FRIEDMAN, LTD.**

Linda D. Friedman    IL Bar #06190092
Mark S. Current       IL Bar #6332595
303 W. Madison Street, Suite 2600
Chicago, IL 60606
(312) 431-0888
lfriedman@sfltd.com
mcurrent@sfltd.com

*Attorneys for Plaintiff*

8